IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AALIYAH ROGERS, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 19-2567 |
| v. | : | |
| | : | |
| SMITH VOLKSWAGEN, LTD, | : | |
| Defendant. | : | |

**April 6, 2020**                                                                  **Anita B. Brody, J.**

## MEMORANDUM

Plaintiff Aaaliyah Rogers bring this putative class action against Defendant Smith Volkswagen, LTD ("Smith") for accessing credit reports without any permissible purpose, in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b. I exercise jurisdiction over this suit pursuant to federal question jurisdiction, 28 U.S.C. § 1331. Smith moves to dismiss this suit for lack of personal jurisdiction or to transfer it based on improper venue. In the alternative, Smith moves to dismiss the action for failure to state a claim on which relief can be granted. For the below reasons, I will deny Smith's motion.

## I. BACKGROUND[1]

Defendant Smith Volkswagen, LTD ("Smith") is a single-store car dealership that primarily sells cars to customers in Delaware. Jason Smith Aff. ¶ 2, ECF No. 12-5. Smith maintains its principal place of business and is incorporated in Delaware. *Id.* ¶¶ 3-4.

On May 3, 2019, Plaintiff Aaliyah Rogers, a resident of Pennsylvania, visited Smith to

---

[1] "In deciding a motion to dismiss for lack of personal jurisdiction, we take the allegations of the complaint as true. But once a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996) (citation omitted). The facts are taken from the Amended Complaint and the evidence presented by the parties.

1

inquire about vehicles that Smith had for sale. Am. Compl. ¶ 9, ECF No. 9; Aaliyah Rogers Aff. ¶¶ 2-3, ECF No. 13-3. During her visit, Rogers "made clear that she was only a prospective customer." Am. Compl. ¶ 10; *see also* Rogers Aff. ¶ 4. Rogers never agreed to purchase a vehicle, or any services, from Smith. Am. Compl. ¶ 10; Rogers Aff. ¶ 5. Rogers did not sign any agreement with Smith and did not authorize Smith, or any affiliates or agents, to conduct any credit inquiries on her behalf. Am. Compl. ¶ 10; Rogers Aff. ¶¶ 5-7.

Without authorization, on seven separate occasions, Smith caused Rogers' credit report to be electronically accessed from Trans Union, LLC ("Trans Union"), located in Chester, Pennsylvania. Am. Compl. ¶ 12; Rogers Aff. ¶¶ 8-11.

On May 3, 2019, Smith directly accessed Rogers' credit report from Trans Union.[2] *Id.* ¶ 11 n. 1; Rogers Aff. ¶¶ 8-9. Smith also submitted loan applications for Rogers to Ally Financial, TD Auto Finance, VW Credit, Inc., AmeriCredit, Citizens One Auto Finance, and Capital One Auto Finance. Am. Compl. ¶ 11 n.1; Rogers Aff. ¶ 10. At Smith's direction, each of these financial institutions acquired Rogers' credit report from Trans Union in Pennsylvania without her permission. Am. Compl. ¶ 11 n.1; Rogers Aff. ¶ 11. Rogers received letters from Citizens One Auto Finance and VW Credit, Inc. confirming that they had obtained her credit report from Trans Union's location in Chester, Pennsylvania. Rogers Aff. ¶ 12, Exs A-B.

---

[2] In a letter to the Court, Smith makes the following assertions:

> [P]laintiff's personal information was entered into its dealer management system Dealertrack, and her credit report was obtained through Smith Volkswagen, LTD's contract with a third party. In its contract with the third party, it is the third party, and not Smith Volkswagen, LTD, that obtains credit reports for customers from one or more nationally known credit bureaus. Defendant Smith Volkswagen, LTD has no knowledge or information whether plaintiff's credit report was obtained from any location Trans Union may have in Chester, Pennsylvania.

Status Report, ECF. No. 25. Because Smith has presented no evidence to support these assertions, they cannot be considered.

Smith "has routinely and systematically obtained credit reports on prospective customers with no permissible purpose or written consent." Am. Compl. ¶ 15.

## II. DISCUSSION

Smith moves to dismiss this suit for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or to transfer it based on improper venue pursuant to 28 U.S.C. § 1406. In the alternative, Smith moves to dismiss the action for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A. Personal Jurisdiction

If a defendant moves to dismiss a lawsuit for lack of personal jurisdiction pursuant to Rule 12(b)(2), then the plaintiff bears the burden of demonstrating the facts that establish jurisdiction. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). "In deciding a motion to dismiss for lack of personal jurisdiction, we take the allegations of the complaint as true. But once a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996) (citation omitted); *see also Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). Pennsylvania's long-arm statute provides for jurisdiction "based on the most

minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b). Accordingly, "[t]he Due Process Clause of the Fourteenth Amendment sets the outer boundaries of [Pennsylvania's] authority to proceed against a defendant." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011). In order for a court to exercise personal jurisdiction over an out-of-state defendant, due process requires that the defendant "have certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). "As th[e] Court has increasingly trained on the 'relationship among the defendant, the forum, and the litigation,' *i.e.*, specific jurisdiction, general jurisdiction has come to occupy a less dominant place in the contemporary scheme." *Daimler*, 571 U.S. at 132-33 (footnote omitted) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

Smith moves to dismiss for lack of personal jurisdiction. Rogers contends that this Court has both general jurisdiction and specific jurisdiction over Smith.

### 1. General Jurisdiction

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 571 U.S. at 137. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919. The paradigm forums, in

4

which a corporation is reasonably regarded as at home, are the place of incorporation and the principal place of business. *Daimler*, 571 U.S. at 137. "The exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler*, 571 U.S. at 139 n.19). However, "the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business . . . , is unacceptably grasping." *Daimler*, 571 U.S. at 138 (internal quotation marks omitted). "The Fourteenth Amendment due process constraint described in *Daimler*. . . applies to all state-court assertions of general jurisdiction over nonresident defendants; the constraint does not vary with the type of claim asserted or business enterprise sued." *Tyrrell*, 137 S. Ct. at 1558–59.

Smith is not incorporated in Pennsylvania and does not have its principal place of business in Pennsylvania. Rogers contends that this Court has general jurisdiction over Smith because Smith has continuous and systematic contacts with Pennsylvania. *Daimler* establishes, however, that engaging in a substantial, continuous, and systematic course of business is insufficient to establish general jurisdiction. A court may only assert general jurisdiction in a forum in which the corporation is regarded as home—typically, the place of incorporation or the principal place of business. Rogers does not argue that this is an exceptional case in which Smith's operations in Pennsylvania are so substantial and important as to render it at home in Pennsylvania. Because Smith is not incorporated in Pennsylvania and does not have its principal place of business in Pennsylvania, it is not at home in Pennsylvania. Accordingly, this Court lacks general jurisdiction over Smith.

5

### 2. Specific Jurisdiction

The analysis of whether a forum state has sufficient minimum contacts to exercise specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (quoting *Shaffer*, 433 U.S. at 204). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The minimum contacts necessary to create specific jurisdiction "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285. "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Id.* (citation omitted). Specific jurisdiction "depends on an 'affiliation between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (quoting von Mehren & Trautman, Jurisdiction To Adjudicate: A Suggested Analysis, 69 Harv. L. Rev. 1121, 1136 (1966)).

A plaintiff must establish three key elements to show that a court has specific personal jurisdiction over a defendant. "First, the defendant must have 'purposefully directed [its] activities' at the forum." *O'Connor*, 496 F.3d at 317 (quoting *Burger King*, 471 U.S. at 472). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Third,

"a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *Id.* (quoting *Burger King*, 471 U.S. at 476).

### a. Purposeful Availment

The threshold inquiry is whether a defendant "purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Physical presence in the forum is not required, "[b]ut what is necessary is a deliberate targeting of the forum." *O'Connor*, 496 F.3d at 317. "Where the contacts evaluated are those that give rise to the litigation, even one contact with the forum may be enough to justify jurisdiction as long as the other criteria are met." *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993); *see also Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment.")

In *MacDermid, Inc. v. Deiter*, the Second Circuit addressed whether a court in Connecticut had personal jurisdiction "over a defendant who, while domiciled and working in Canada, [wa]s alleged to have accessed a computer server located in Connecticut to misappropriate confidential information belonging to her employer." 702 F.3d 725, 726–27 (2d Cir. 2012). In *MacDermid, Inc. v. Deiter*, the employee knew that the server was located in Connecticut and that she did not have authority to download the confidential information located there to her personal email account. *Id.* at 727. The Second Circuit held that the employee purposefully availed herself of the privilege of conducting business in Connecticut because she knew that the server and confidential information were located in Connecticut and "used those servers to send an email which itself constituted the alleged tort." *Id.* at 730. Furthermore, the Second Circuit recognized that "in addition to purposefully availing herself of the privilege of

conducting computer activities in Connecticut, she directed her allegedly tortious conduct towards [the plaintiff], a Connecticut corporation." *Id.* (citing *Calder v. Jones*, 465 U.S. 783, 790 (2012) (holding California jurisdiction to be proper over Florida writer and publisher who directed their tortious conduct, defamation, toward a California resident). After concluding that the exercise of personal jurisdiction comported with due process, the Second Circuit held that the district court had personal jurisdiction over the action. *Id.* at 730-31.

In *Smith v. Ed Overcash, et al.*, 14-cv-4368, slip op. at 1 (E.D. Pa. Oct. 17, 2014), an out-of-state plaintiff brought suit in Pennsylvania against an out-of-state defendant for violating the FCRA. The district court addressed whether it could exercise personal jurisdiction in Pennsylvania over the out-of-state defendant who allegedly violated the FCRA by seeking a credit report from Trans Union located in Pennsylvania. *Id.* at 2. The court recognized that the defendant's sole contact with Pennsylvania—its inquiry into the plaintiff's credit report with Trans Union in Pennsylvania was "the gravamen of plaintiff's Complaint, as the alleged nature of the inquiry . . . is claimed to have caused the harm to plaintiff's credit report." *Id.* at 7. The court held that because the "inquiry into [the plaintiff's] credit report with TransUnion, LLC in Pennsylvania itself caused the harm, plaintiff ha[d] made a *prima facie* showing that [the court] ha[d] specific personal jurisdiction." *Id.* at 9 (finding specific jurisdiction because "(1) [the defendant] purposefully directed activity at the forum state by contacting Transunion, (2) the litigation arose out of that contact with Transunion, and (3) jurisdiction of the court comports with fair play and substantial justice").

In this case, Rogers has presented a *prima facie* case that Smith reached into Pennsylvania on seven separate occasions to access her credit report in violation of the FCRA—once by directly accessing Rogers' credit report and six additional times by directing financial

institutions to access Rogers' credit report. Similar to *Smith v. Ed Overcash*, the act of accessing Rogers' credit report in Pennsylvania itself was the injury, which caused the harm to Rogers and gave rise to this litigation. Not only did Smith directly access Rogers' credit report, it also directed six separate financial institutions to access Rogers' credit report from Trans Union in Chester, Pennsylvania.

Moreover, when Smith made the decision to access Rogers' credit report in Pennsylvania, it was aware that Rogers was a Pennsylvania resident. "When a consumer brings an action for violation of the disclosure provisions of the FCRA, the Act's purpose of protecting consumer confidentiality is implicated. In that respect, such cases are akin to invasion of privacy cases under state law-cases where the plaintiff alleges that the defendant unlawfully invaded the plaintiff's privacy by obtaining information deemed confidential." *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1074 (9th Cir. 2001). As in invasion of privacy cases, "the primary damage is the mental distress from having been exposed to public view." *Id.* (quoting *Time, Inc. v. Hill*, 385 U.S. 374, 385 n.9 (1967)). That mental stress can only be felt where the plaintiff resides. *Id.* Accordingly, the plaintiff's state of residence is the focal point of the harm suffered from a violation of the disclosure provisions of the FCRA. *Id.* Like the defendant in *MacDermid, Inc. v. Deiter*, in addition to purposefully availing itself of the privilege of accessing the credit report in Pennsylvania, Smith also directed its tortious conduct towards Rogers, a Pennsylvania resident. Accordingly, Smith purposefully availed itself of the privilege of conducting activities within the forum State.[3]

---

[3] I apply the traditional three-step analysis for specific jurisdiction. However, under the "effects test" derived from *Calder v. Jones*, 465 U.S. 783 (1984), a plaintiff may also establish jurisdiction if she demonstrates:

    (1) The defendant committed an intentional tort;

**b. Relatedness**

Because Smith meets the first specific jurisdiction requirement—purposeful availment, the inquiry now turns to whether it meets the second requirement—relatedness. "[S]pecific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Goodyear*, 564 U.S. at 919 (quoting von Mehren & Trautman at 1136). "What is needed . . . is a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1781 (2017).

Accordingly, a plaintiff's claims must "arise out of or relate to" a defendant's forum contacts. For claims to "arise out of or relate to" a defendant's contacts, "the causal connection can be somewhat looser than the tort concept of proximate causation, but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable." *O'Connor*, 496 F.3d at 323 (citation omitted). The inquiry is "necessarily fact-sensitive." *Id.* "[B]ut-for causation provides a useful starting point for the relatedness inquiry." *Id.* at 322. "[A]lthough the analysis may begin with but-for causation, it cannot end there. The

---

(2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;

(3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 1998). While "[t]he effects test and traditional specific jurisdiction analysis are different, . . . they are cut from the same cloth." *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007). Here, the exercise of jurisdiction is appropriate under either analysis. Several courts have analogized that a violation of the FCRA is akin to an intentional tort and applied the effects test. *See Myers*, 238 F.3d at 1073-75; *Weinstein v. Pullar*, No. 13-4502, 2013 WL 6734317, at *4 (D.N.J. Dec. 19, 2013); *Harris v. Trans Union*, LLC, 197 F. Supp. 2d 200, 203 (E.D. Pa. 2002). Under the effects test, the Court may exercise personal jurisdiction because Rogers felt the brunt of the harm—the mental distress she suffered—in Pennsylvania where she resides and Smith expressly aimed its tortious conduct at the forum by reaching into Pennsylvania seven times to access a credit report of a Pennsylvania resident.

animating principle behind the relatedness requirement is the notion of a tacit quid pro quo that makes litigation in the forum reasonably foreseeable." *Id*.

Here, it is beyond doubt that this litigation arose from Smith's accessing of Rogers' credit report in Pennsylvania. Rogers would not have suffered harm but for Smith's accessing of her credit report. It was reasonably foreseeable to Smith, when it accessed a Pennsylvania resident's credit report from Trans Union in Pennsylvania, that it would be required to litigate this alleged FCRA violation in Pennsylvania.

### c. Fair Play and Substantial Justice

The exercise of jurisdiction must also "comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). "The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *O'Connor*, 496 F.3d at 324 (quoting *Burger King*, 471 U.S. at 477). When determining jurisdictional reasonableness, courts should consider several factors:

> "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies," *Burger King*, 471 U.S. at 477, and "[t]he procedural and substantive interests of other nations." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987).

*Id.* "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi*, 480 U.S. at 114.

Because Rogers has established that minimum contacts exist between Pennsylvania and Smith, the exercise of personal jurisdiction is "presumptively constitutional," and Smith must demonstrate a compelling reason why jurisdiction is unreasonable." *O'Connor*, 496 F.3d at 324.

Smith has made no such showing. Smith neither discusses this final jurisdictional requirement nor provides any reason why the exercise of jurisdiction in Pennsylvania would be unreasonable or burdensome. Accordingly, the Court's exercise of personal jurisdiction over Smith "comport[s] with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320).

Rogers has made a *prima facie* showing that the Court may exercise personal jurisdiction over this action.[4] Therefore, I will deny Smith's motion to dismiss for lack of personal jurisdiction.

### B. Venue

If venue is improper, a district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The defendant bears the burden of showing that venue is improper. *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982). The question of whether venue is proper is "generally governed by 28 U.S.C. § 1391."[5] *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 55 (2013). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does [fall within one of the three categories], venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Id.* at 56.

---

[4] When a court has not conducted an evidentiary hearing and the plaintiff has only established a *prima facie* case of personal jurisdiction, the court may later revisit the issue of personal jurisdiction. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992) ("Of course, by accepting a plaintiff's facts as true when a motion to dismiss is originally made, a court is not precluded from revisiting the issue if it appears that the facts alleged to support jurisdiction are in dispute.").

[5] Section 1391 governs venue where a more specific venue provision does not apply. *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 55 n.2 (2013).

Section 1391(b) provides that a civil action may be brought in the following:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). For purposes of venue, "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2).

Smith argues that venue is improper and this action should be transferred to the United States District Court for the District of Delaware. It has already been established, however, that Smith is subject to personal jurisdiction in this district. Because Smith is subject to personal jurisdiction in the Eastern District of Pennsylvania, Smith is deemed to reside here. *See* 28 U.S.C. § 1391(c)(2). Venue is proper in this district under § 1391(b)(1) because it is a judicial district in which Defendant resides. Therefore, I will deny Smith's motion to transfer based on improper venue.

### C. Failure to State a Claim

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

To survive dismissal, a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To determine the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must do the following:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (quoting *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered . . . ." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). Thus, a court may consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Smith moves to dismiss Rogers' claim under § 1681b of the FCRA on the basis that § 1681b only applies to consumer reporting agencies, and Smith is not a consumer reporting agency.[6] Smith cites to § 1681b(a), which only applies to consumer reporting agencies and

---

[6] In its reply brief, Smith argues for the first time that even if §1681b applies, the Court should grant the motion to dismiss because Smith had a permissible purpose for requesting Rogers' credit report. Because Smith waited to raise this argument until its reply brief, Smith has waived this argument and it will not be addressed. *See United States v. Martin*, 454 F. Supp. 2d 278, 281 n.3 (E.D. Pa. 2006) (declining to

limits the circumstances under which a consumer reporting agency may furnish a consumer report. 15 U.S.C. § 1681b(a) (providing that "any consumer reporting agency may furnish a consumer report under the following circumstances and no other").

Although § 1681b(a) focuses only on consumer reporting agencies, § 1681b(f) imposes a similar prohibition on *any person* using or obtaining a consumer report. Section 1681b(f) provides in relevant part: "A person shall not use or obtain a consumer report for any purpose unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section." 15 U.S.C. § 1681b(f); *see also James v. Interstate Credit Collection, Inc.*, 2005 WL 1017819, at *1 (E.D. Pa. Apr. 28, 2005) (citing 15 U.S.C. § 1681b(f)) ("The FCRA requires that a user of a consumer report obtain it for a permissible purpose."). The term "person," as used in § 1681b, includes "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).

Because § 1681b does not only apply to consumer reporting agencies but also applies to *any person* using or obtaining a consumer report, I will deny Smith's motion to dismiss for failure to state a claim.

## V. CONCLUSION

For the reasons set forth above, I will deny Smith's motion to dismiss.

__S/ ANITA B. BRODY, J.____
ANITA B. BRODY, J.

Copies **VIA ECF** on 04/06/2020

---

address any issues raised for the first time in a reply brief because "[a] reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief; it is not intended as a forum to raise new issues"); *United States v. Medeiros*, 710 F. Supp. 106, 109 (M.D. Pa. 1989) ("[I]t is improper for a party to present a new argument in his or her reply brief."); *see also Wilson v. Colvin*, 218 F. Supp. 3d 439, 452 (E.D. Pa. 2016) (finding that a magistrate judge "correctly rejected" an argument "raised for the first time in Plaintiff's reply brief" because it was "deemed waived").